UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN DEMYANOVICH,

    Plaintiff,

-vs-

                                       Case No. 10-15119
                                       HON. AVERN COHN

CADON PLATING AND COATINGS, LLC, and
AL ENSIGN,

    Defendants.
_____/

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This is an employment discrimination case under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, and Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-12117, with pendant state law claims.  Plaintiff Alan Demyanovich (Demyanovich) claims that his employer, Defendant Cadon Plating and Coatings, LLC (Cadon), and his supervisor, Defendant Al Ensign (Ensign) (collectively, defendants), discriminated against him by denying him medical leave, and retaliated against him by giving him discriminatory work assignments and ultimately terminating him.

The complaint is in seven counts as follows:[1] (I) FMLA Interference; (II) FMLA Retaliation; (III) ADA Interference; (IV)    Michigan Persons with Disabilities Civil Rights Act (PWDCRA), M.C.L. §§ 37.1101-37.1607; (V) Intentional Infliction of Emotional Distress

---

[1]Both ADA claims are brought against Cadon only; the remaining claims are brought against both defendants.

(IIED); (VI) Civil Conspiracy; and (VII) ADA Retaliation.

Now before the Court is defendants' motion for summary judgment as to the ADA retaliation claim and motion to dismiss as to the remaining claims.[2] For the reasons that follow, defendants' motion to dismiss will be denied in part and granted in part: the FMLA interference and FMLA retaliation claims will go forward and the other claims will be dismissed. Defendants' motion for summary judgment as to the ADA retaliation claim will be denied.

## II. BACKGROUND

Demyanovich began working as a machine operator at Cadon in 1989. Cadon provides advanced corrosion-resistant coatings to the manufacturing and automobile industries. Ensign was Demyanovich's supervisor. After 10 years of employment, Demyanovich was diagnosed with dilated cardiomyopathy.[3] Following the diagnosis, Demyanovich's doctors prohibited him from heavy lifting and working over 40 hours per week. He was granted FMLA leave at various times during the ten years following his diagnosis for various health reasons. He was also denied leave during this period.[4]

In December of 2009, after taking extended FMLA leave due to the cardiomyopathy, Demyanovich returned to work with doctor prescribed work limitations on exertion and hours worked per week. Upon his return, he was assigned additional, more difficult tasks,

---

[2]Contrary to the Court's motion practice guidelines relating to summary judgment motions, the parties did not file a joint statement of material facts in dispute.

[3] Dilated cardiomyopathy is a heart disease, having genetic and environmental causes; the heart is weakened and enlarged.

[4] A further description of the details surrounding the grant and denial of FMLA leave is not described in the parties' papers.

allegedly in retaliation for taking leave. According to Demyanovich, defendants ignored his work limitations and did not provide him with requested accommodations, assigning more favorable work to employees who were not considered disabled.

On February 26, 2010, defendants terminated Demyanovich for violating company attendance policies. Demyanovich claims that defendants used his FMLA leave against him in determining that his absences exceeded those allotted by the attendance policy. He says that defendants terminated him because of his disability.

Demyanovich filed an EEOC charge of discrimination on March 15, 2010. (Doc. 7-2). According to Demyanovich, on or around September 7, 2010, the EEOC issued a cause determination in favor of him. On October 27, 2010, Demyanovich received a right-to-sue letter from the EEOC. On December 23, 2010, the present lawsuit was filed.

### III. ANALYSIS

#### A. Motion to Dismiss: Counts I-VI

#### 1. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. To survive the motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007); see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). This Court is "not bound to accept as true a legal conclusion couched as factual allegation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a

complaint that states a plausible claim for relief survives a motion to dismiss." Id.

In sum, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id. at 1940.

## 2. FMLA Interference

### a.

The FMLA provides eligible employees with not more than 12 weeks of unpaid leave for reasons that include "serious health conditions" making the employee unable to perform his or her job. 29 U.S.C. § 2612(a)(1)(D); Harris v. Metro. Gov't of Nashville, 594 F.3d 476, 482 (6th Cir. 2010). An employee returning to work after taking leave has the right to be "restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment." § 2614(a)(1)(A)-(B).

For an FMLA interference claim, a plaintiff must establish five elements: 1) he was an eligible employee; 2) his employer was a covered employer, as defined by the statute; 3) he was entitled to leave under the FMLA; 4) he gave defendant notice of his intent to take this leave; and 5) defendant denied him FMLA benefits or interfered with his FMLA rights. Harris, supra, at 482.

b.

Defendants first argue that Demyanovich did not sufficiently state the third or fourth FMLA interference elements: that he gave defendants notice of his intention to take leave, and that defendants denied him leave. Second, defendants argue that Demyanovich did not sufficiently set forth facts to support the first element: that he was eligible for FMLA leave. Particularly, defendants say that Demyanovich did not state that his heart disease involved inpatient care or continuous treatment by a health care provider, as required by 29 U.S.C. § 2611(11).

Demyanovich does not respond directly to the defendants' argument that he did not state facts related to the notice and denial requirements of this claim. However, in response to eligibility, Demyanovich explains that cardiomyopathy "obviously requires on-going treatment" and that he "continually" produced work restrictions from his doctors as evidence of this treatment.

c.

As to the notice element, Demyanovich's complaint asserts generally that "from time to time over the past 10 years, plaintiff has requested . . . leave under FMLA." (Doc. 1, p. 11). As to the wrongful denial element, Demyanovich claims that he was wrongfully denied FMLA leave "on certain occasions." (Doc. 1, p. 12.). Finally, as to eligibility, his complaint states that he has a "serious health condition" which was treated by a health care provider.[5]

---

[5]Demyanovich does not expressly state whether his condition required inpatient care. However, 29 U.S.C. § 2611(11) defines a "serious health condition" as requiring either inpatient care or continuous treatment by a health care provider, not both.

Albeit brief, Demyanovich's complaint sufficiently establishes the plausibility of an FMLA interference claim. Iqbal, supra, at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, dismissal is not warranted.

### 3. FMLA Retaliation

a.

Relating to Demyanovich's FMLA retaliation claim, the statute makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). Employers cannot "'use the taking of FMLA leave as a negative factor in employment actions.'" Arban v. West Pub. Corp., 345 F.3d 390, 403 (6th Cir. 2003) (quoting 29 C.F.R. § 825.220(c)). This is true even if only a portion of the leave taken by an employee in violation of the employer's attendance policy and resulting in adverse employment action is FMLA leave. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 163 (1st Cir. 1998). Further, the "FMLA does not permit an employer to limit his employee's rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." Cavin v. Honda of America Manufacturing, Inc., 346 F.3d 713, 720 (6th Cir. 2003) (finding FMLA interference where plaintiff was terminated for not notifying his employer of his leave within three days of his motorcycle accident and subsequent leave, pursuant to its internal policies).

"In order to establish a case of retaliatory discharge, plaintiff must prove (1) that he

6

engaged in an activity protected by [the FMLA]; (2) that this exercise of his protected civil rights was known to defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir. 1990) (citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987)).

b.

Defendants argue that Demyanovich did not satisfy the first element, that he was engaged in a protected activity, because he did not specify when and why he sought leave. They also argue that he did not allege facts describing the circumstances surrounding the complaints he made about their "discriminatory practices." Defendants argue that Demyanovich did not expressly state that he was fired for taking FMLA leave. Instead, they assert that he may have been fired for taking non-FMLA leave, explaining that not all leave is necessarily FMLA leave. Finally, defendants assert that Demyanovich's complaint is merely conclusory, comparing him to the plaintiff in Khalik v. United Airlines, 2010 WL 5068139 (D. Colo. Dec. 7, 2010), who did not sufficiently state her retaliation claim because she failed to explain "when she sought leave, why she sought leave, or the reasons for the denial" or "when, how, and to whom she complained." Id. at *4, *6.

In response, Demyanovich argues that his complaint is more detailed than the plaintiff's in Khalik, supra, because he provided the reason, i.e., cardiomyopathy, for taking the FMLA leave that resulted in adverse employment actions. He maintains that defendants retaliated against him for taking FMLA leave and for complaining about defendants' "discriminatory and illegal employment practices" by giving him additional and

7

more difficult work assignments.

c.

Here, although Demyanovich's claim regarding his leave is not excessively detailed, it need not be. His complaint states that he requested leave, that he was granted leave, and the date of his return. Further, as to causation, Demyanovich states defendants told him that "despite his approved medical leave, his absences were being used against him for purposes of administering the defendant's attendance policies." (Doc. 1, p. 32.) He also claims that he was fired for violation of these policies. Finally, Demyanovich's complaint describes being assigned difficult tasks in retaliation upon returning from his extended leave. Although he does not provide examples of what these tasks entailed, he does indicate when they took place, stating that from December 14, 2009, until his termination, he was frequently assigned additional responsibilities. (Doc. 1, pp. 13, 33). He also describes the circumstances surrounding these assignments, explaining that right before his work load increased in size and difficulty, shortly after returning from his FMLA leave, defendants told him that "despite his approved medical leave, his absences were being used against him for purposes of administering the defendant's attendance policies" (Doc. 1, p. 32).

Further, the fact that only a few months passed between his return to work in December of 2009 and his termination for violation of attendance policies on February 26, 2010, tends to show that these two occurrences were related. Indeed, temporal proximity, although insufficient on its own to establish retaliation, may raise an inference that the protected activity was the reason for the adverse employment action when weighed with additional evidence. Joostberns v. United Parcel Services, Inc., 2006 WL 41189, at *9 (6th

Cir. Jan. 9, 2006) (holding plaintiff established a prima facie case of FMLA retaliation where plaintiff's supervisor made negative comments about his absences, disciplinary actions against plaintiff began two months after returning from first FMLA leave, and plaintiff was terminated three weeks after second FMLA leave).

In sum, Demyanovich has sufficiently set forth facts describing his granted FMLA leave, the adverse employment actions he faced upon return from leave, and the temporal connection between these events, in order to establish causation. These are not mere conclusory statements; they are factual allegations which plausibly demonstrate that Demyanovich was discriminated against in retaliation for taking FMLA leave. Thus, the FMLA retaliation claim will not be dismissed.

### 4. ADA Interference

a.

Defendants next argue that Demyanovich's ADA interference claim against Cadon should be dismissed. "To establish a prima facie case of disability discrimination, a plaintiff must show . . . that he is 'disabled.'" Anderson v. Avon Products, Inc., 340 Fed. Appx. 284, 288 (6th Cir. 2009) (unpublished) (quoting Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir.1996)). "'Disabled' in this context means having 'a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual[.]'" Anderson, supra (quoting 42 U.S.C. § 12102(1)(A)). "The plaintiff bears the burden of proving that he is disabled." Anderson, supra (citing Monette, 90 F.3d at 1186). Finally, "[i]t is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment." Id. "Instead, the ADA requires

9

those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation . . . is substantial." Id. (quoting Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002) (internal quotation marks and citation omitted)).

b.

Here, Demyanovich makes a general claim that he suffers from cardiomypathy, and says that he is a "'qualified individual with a disability' as that term is defined in 42 U.S.C. 1211(8)." (Doc. 1). However, he fails to identify in his complaint any major life activity that his condition substantially limits. As a result, Demyanovich has failed to meet his burden of establishing that he is disabled under the ADA. See Anderson, supra, at 288. Thus, dismissal of the ADA claim is warranted.

### 5. PWDCRA

a.

Defendants next argue that Demyanovich's state PWDCRA claim should be dismissed. "To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." Peden v. City of Detroit, 470 Mich. 195, 217 (2004) (quoting Chmielewski v. Xermac, Inc., 457 Mich. 593, 601 (1984)). "[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity." Peden, supra, at 204.

A violation of the ADA does not constitute a violation of the PWDCRA per se; a

separate analysis of claims under each statute must be made. Peden, supra, at 217 ("because the acts are not identical, and because federal laws and regulations are not binding authority on a Michigan court interpreting a Michigan statute, we caution against simply assuming that the PWDCRA analysis will invariably parallel that of the ADA"). On the other hand, these statutes have a majority of elements in common thus the analysis is "essentially the same." Id. ("the ADA's qualified language and the PWDCRA's disability language require essentially the same analysis") (internal quote marks omitted).

b.

As with the ADA interference claim, Demyanovich's complaint does not contain any facts explaining how his cardiomyopathy impairs any major life activity, nor that the impairment is substantial. Additionally, Demyanovich has not sufficiently described the discrimination he faced regarding accommodations or being limited or segregated. Finally, Demyanovich offers no facts that other similarly situated people who were not disabled were treated more favorably than him. Accordingly, the PWDCRA fails for the same reasons that the ADA interference claim fails. Because this claim has not been sufficiently detailed, it will be dismissed.

### 6. IIED

a.

As to Demyanovich's IIED claim, pursuant to Michigan law, a plaintiff must establish the following elements for a claim of IIED: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. Roberts v. Auto-Owners Ins. Co., 422 Mich. 594, 602 (1985). Each of these elements must be stated with specificity.

Walsh v. Taylor, 263 Mich. App. 618, 634 (2004) ("[The] plaintiff's complaint fails to allege with specificity any actions taken by [the defendant] with intent or recklessness, and thus fails to state a valid claim for relief."). "'An employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more.'" Talley v. Family Dollar Store of Ohio, Inc., 542 F.3d 1099, 1111 (6th Cir. 2008) (quoting Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 376 (6th Cir. 1999)).

b.

Defendants argue that Demyanovich has not set forth sufficient facts to support a claim for IIED and has merely restated the elements of the claim. Additionally, defendants argue that termination of an employer on the basis of discrimination does not rise to the level of extreme and outrageous conduct on its own.

In response, Demyanovich reiterates that he has suffered severe emotional distress inflicted by defendants by terminating him.

c.

Demyanovich does not provide facts to support that he has suffered from severe emotional distress or that defendants' conduct was extreme and outrageous. Further, he does not provide any facts regarding defendants' intent or recklessness. Indeed, the Sixth Circuit has determined that the mere firing of an employee does not, in and of itself, constitute extreme and outrageous conduct. See Talley, supra, at 1111.

Thus, even though Demyanovich claims that the defendants' act of terminating him was "extreme and outrageous," he has not stated provided any facts to support this legal

conclusion. Accordingly, the IIED claim cannot survive defendants' motion to dismiss.

### 7. Conspiracy

a.

To prevail with a civil conspiracy claim, a plaintiff must show the involvement of two or more people in a concerted action undertaken to accomplish an unlawful purpose or a lawful purpose by unlawful means. Mays v. Three Rivers Rubber Corp., 135 Mich. App. 42, 48 (1984). "Under Michigan law, in a civil action for damages for conspiracy, 'the gist or gravamen of the action is not the conspiracy but is the wrongful act causing the damage. The conspiracy standing alone without commission of acts causing damage would not be actionable.'" Glidden Co. v. Jandernoa, F. Supp. 2d 541, 555 (W.D. Mich. 1998) (quoting Roche v. Blair, 305 Mich. 608 (1943)); see also Chilton's, Inc. v. Wilmington Apartment Co., 365 Mich. 242, 250 (1961) (holding that a motion to dismiss for failure to state a claim for conspiracy to commit fraud was properly granted where plaintiff's complaint did not allege any affirmative, fraudulent act of the defendants)).

b.

Defendants argue that Demyanovich's complaint does not state any concerted actions between the defendants, nor did he sufficiently state an underlying tort in order to demonstrate a wrongful act committed by defendants.

Demyanovich does not address defendants' argument. However, his complaint states that defendants unlawfully discriminated and retaliated against him together as members of a conspiracy.

c.

Because a conspiracy claim cannot exist without an underlying tort, and because Demyanovich did not claim a concerted effort between the defendants in violation of the FMLA, a plausible claim for relief has not been established. Thus, the claim will be dismissed.

### B. Motion for Summary Judgment: Count VII

### 1. Standard of Review

As to the remaining claim of ADA retaliation, defendants move for summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when, 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 475-76 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). However, the non-moving party must present some evidence to show a genuine issue for trial exists. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 476 (quoting Anderson, supra, at 249-50) (internal quotation marks omitted).

### 2. ADA Retaliation


a.

The ADA prohibits an employer from retaliating against an employee because of his or her engagement in a protected activity. 42 U.S.C. § 12203(a). The elements of an ADA retaliation claim are: 1) the plaintiff engaged in a protected activity; 2) the exercise of his civil rights was known by the defendant; 3) defendant thereafter took adverse employment action; and 4) a causal connection exists between the protected activity and the adverse action. Walborn v. Erie County Care Facility, 150 F.3d 584, 589-90 (6th Cir. 1998); EEOC v. Perfection Steel Treating, Inc., 2000 WL 246597, at *2 (E.D. Mich. Feb. 8, 2000).

Further, "[t]he exhaustion of administrative remedies is a condition precedent to an ADA action." Hoover v. Timken Co., 2002 WL 314951, at **1 (6th Cir. Feb. 26, 2002). In order to exhaust administrative remedies under the ADA, a plaintiff must file an EEOC charge within 80 days of the alleged discrimination, or file a charge with a state agency within 300 days. Id. After the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has 90 days to file his civil action. Id. The requirement of administrative exhaustion "serves a legitimate state interest in requiring parties to exhaust administrative remedies before proceeding to court, for such a rule prevents having an overworked court consider issues and remedies available through administrative channels." Jimmy Swagart Indus. v. Board of Equalization of California, 493 U.S. 378, 397 (1990) (internal quotation marks and citation omitted).

b.

Defendants argue that Demyanovich's EEOC charge is deficient because only the "sex" and "disability" discrimination boxes were checked, and not the "retaliation" checkbox.

On this narrow ground, defendants argue that Demyanovich has not exhausted his administrative remedies thus entitling them to summary judgment.

In response, Demyanovich says that the "checkbox rule" does not necessarily apply to pro se litigants, which Demyanovich was at the time the EEOC charge was filed. Particularly, during oral argument, Demyanovich cited Chavez v. Waterford School Distr., 720 F. Supp. 2d 845 (E.D. Mich. 2010), for the proposition that "EEOC charge[s] filed by lay complainants should be liberally construed, because they are unschooled in the technicalities of the law and proceed without counsel." Id. at 853. Chavez holds that "where the claimant is unrepresented, a broader reading of the charge is compelled." Id. (citing Tisdale v. Federal Express Corp., 415 F.3d 516, 527 (6th Cir. 2005)).

Defendants reply that Chavez is distinguishable from the present case and instead argue that Younis v. Pinnacle Airlines, Inc., 610 F.3d 359 (6th Cir. 2010) applies. In Younis, the Sixth Circuit court of appeals held that while a pro se claimant's charge must be liberally construed, the claim must nonetheless be precluded "unless the factual allegations in the complaint can be reasonably inferred from the facts alleged in the charge," as otherwise it cannot reasonably be expected to grow out of the charge such that the EEOC was put on notice. See Younis, supra, at 362; see also Scott v. Eastman Chem. Co., 275 Fed. Appx. 466, 475 (6th Cir. 2008) ("[The plaintiff] failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge."). Defendants say that Demyanovich's ADA retaliation claim cannot be found to have grown out of the facts set forth in the EEOC charge. The Court disagrees.

16

Here, Demyanovich's EEOC charge states, "On February 23, 2010, I was terminated by my employer, when they refused to entertain a reasonable accommodation for my disability (which was requested both verbally and in writing in the past." (Doc. 7-2, p. 4). Based on this statement, one could infer that the EEOC was effectively put on notice for a potential retaliation claim. That is, even under the rule set forth in <u>Younis</u>, an ADA retaliation could have reasonably been expected to grow out of the facts alleged in Demyanovich's charge. Thus, the claim is not precluded simply because Demyanovich failed to check the retaliation box. <u>Davis v. Sodexho</u>, 157 F.3d 460, 463 (6th Cir. 1998) ("where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim"). Accordingly, defendant is not entitled to summary judgment.

## V. Conclusion

For the reasons stated above, defendants' motion to dismiss is DENIED, as to the FMLA interference and FMLA retaliation claims; and GRANTED, as to the ADA interference, PWDCRA, IIED, and Civil Conspiracy claims. Finally, defendants' motion for summary judgment as to the ADA retaliation claim is DENIED.

SO ORDERED.

Dated: July 25, 2011                      S/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 25, 2011, by electronic and/or ordinary mail.
                                          S/Julie Owens
                                          Case Manager, (313) 234-5160