UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN DEMYANOVICH,

     Plaintiff,

vs.                                            Case No. 10-15119

CADON PLATING & COATINGS, LLC,          HON. AVERN COHN
a Michigan limited liability company, 3715
11TH STREET CORP., a Michigan corporation
d/b/a/ CADON PLATING COMPANY, and
AL ENSIGN, an individual,

     Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 33)</u>**

**I. INTRODUCTION**

This is an employment discrimination case under the Family and Medical Leave Act

(FMLA), 29 U.S.C. §§ 2601-2654, and the Americans with Disabilities Act (ADA), 42 U.S.C.

§§ 12111-12117, with a state law claim under the Michigan Persons with Disabilities Act,

MCL 37.1101, et seq. (PWDCRA). Plaintiff Alan Demyanovich (Demyanovich) says that

his employer, defendant Cadon Plating and Coatings, LLC (Cadon), and his supervisor,

defendant Al Ensign (Ensign) (collectively, defendants), discriminated against him by

denying him medical leave, and retaliated against him by giving him discriminatory work

assignments and ultimately terminating him.

Plaintiff's first amended complaint (Doc. 25) is in five counts as follows:

Count I: FMLA Interference;

Count II: FMLA Retaliation;

Count III: ADA Interference;

Count IV: ADA Retaliation; and

Count V: PWDCRA violation.[1]

Now before the Court is defendants' motion for summary judgment (Doc. 33).  For the reasons that follow, the motion will be granted.

## II. BACKGROUND[2]

On November 4, 1989, Demyanovich began working for Cadon, a Michigan limited liability manufacturing company that coats parts to be used in automobiles.  He started as a "helper" on the paint line and within one year became a machine operator.  Cadon has several assembly lines: two zinc plating lines, a phosphate line, three spring-tool-dip-spin paint lines, one WMV paint line, a mechanical paint line, and a hand line.  After several

---

[1] Demyanovich's original complaint also listed state law claims for intentional infliction of emotional distress and civil conspiracy.  On July 25, 2011, the Court dismissed the state law claims (Doc 16).  The Court also dismissed the ADA interference and PWDCRA claims because Demyanovich had failed to identify a major life activity that his condition substantially limits (Id.).  The Court denied summary judgment on the ADA retaliation claim based on Demyanovich's failure to exhaust administrative remedies.  (Id.).  Subsequently, Demyanovich amended his complaint to remedy the pleading deficiencies for the ADA and PWDCRA claims (Doc. 25).

[2] Demyanovich did not follow the Court's summary judgment practice guidelines made clear in its Scheduling Order (Doc. 27).  Defendants filed, as required, a statement of material facts not in dispute, as a separate document to the motion for summary judgment, numbering each paragraph.  Demyanovich's response is deficient.  He did not respond by filing a freestanding document that addresses each numbered paragraph in defendants' statement of material facts not in dispute.  Because of Demyanovich's failure to follow the Court's summary judgment practice guidelines, the parties have not filed a joint submission of material facts not in dispute.

Demyanovich does provide a "statement of facts" section in his response brief.  However, this section is also deficient.  The statement of the facts takes up fifteen pages of the response brief, incorporating a number of arguments within the facts section.

2

years, Demyanovich was promoted to an area leader; he was still responsible for operating machines.

Approximately ten years after he started at Cadon, Demyanovich was diagnosed with dilated cardiomyopathy, i.e. heart disease, and Type II Diabetes.  Following the diagnoses, his treating physicians imposed various work restrictions.  Demyanovich was prohibited from heavy lifting or working in excess of forty-hours in one week.

### A. FMLA Leave and Medical Absences

Demyanovich frequently took time off of work due to his medical conditions.  From November 9, 1998 through November 11, 1998, Demyanovich was out due to an upper respiratory infection (Doc. 38-2, p. 5).  On January 21, 1999, Demyanovich suffered from bronchitis and was out until January 25, 1999 (Id.).  After returning to work, Demyanovich requested FMLA leave due to "difficulty breathing" (Id. at 6).  He was granted FMLA leave beginning February 1, 1999 (Id. at 17).  He was diagnosed with cardiomyopathy on May 20, 1999 and cleared to return to work with limitations (Id. at 8).  The limitations included "not to lift more than 50 lbs. or work more than 40 hours per week" (Id.).

Demyanovich again was out on February 16, 2008 through March 2, 2008 due to "Ac. CHF" (Id. at 18). He was granted FMLA leave from February 18, 2008 until February 29, 2008 (Id. at 21).  From July 28, 2008 until September 15, 2008, Demyanovich was out due to CHF (Id. at 18).  He was granted FMLA leave on July 28, 2008 (Doc. 38-3, p. 3).  His doctor stated that he would be unable to return to work until December 14, 2009 (Id. at 6).

### B. Attendance Policy and Demyanovich's Absences From Work

3

In 2001, Cadon implemented an attendance policy based on a point system.  Under the policy, an employee could earn points for good attendance.  Further, each year, an employee was given sixteen points.  Points were taken away for failing to report to work, arriving at work late, or leaving work early.  If an employee reached zero attendance points, he or she could be terminated.

Since the 2001 attendance policy was implemented, Demyanovich was given multiple written warnings that he was close to reaching the zero point total.  He was also given second and third chances when his attendance points reached zero.  On June 26, 2009, Demyanovich was given a written disciplinary reprimand because of his attendance problems.  On October 2, 2009, he received a final warning because he had only one remaining point (Doc. 34-8).  On November 5, 2009, Demyanovich went home early and lost his remaining point.  However, he was not discharged.

On November 23, 2009, Demyanovich requested medical leave.  An internal Cadon email sent by Billy Hinnant to Randy Allison on November 24, 2009 describes the reason Demyanovich requested medical leave on the prior day:

> One of Cadon's employees, Alan Demyanovich, is currently in Henry Ford Wyandotte Hospital.  He was transported there by ambulance Monday morning.  He went to work at 5 AM and asked if he could have a vacation day because he was extremely sick.  He was told by Joe Gooding that he could not have a vacation day and that if he left work, he was fired because he was out of points on the attendance policy.  I asked Joe to give him a break and Joe told me that he was told not to give him a break.  I walked Alan out to his vehicle and he almost vomited on me.

(Doc. 38-3, p. 9).

4

Demyanovich returned to work on December 14, 2010 with restrictions imposed by his doctor– he was not to work longer than eight hours per day or more than five days per week.  However, Demyanovich says that when he returned, Cadon scheduled him for a fifty-hour week, including a ten-hour-day on Saturday.   Demyanovich met with his supervisors who told him that his attendance points ran out in November, before he took a medical leave of absence.  Nevertheless, Demyanovich was given another chance and a ½ point.

In January of 2010, Demyanovich says he worked on multiple Saturdays.  This, again, resulted in work weeks of more than forty-hours and individual work days greater than eight-hours.

On February 12 and 13 of 2010, Demyanovich went home early.  He says he needed time off because he was being overworked.  As a result, Demyanovich lost two points, leaving him with a negative point balance.   Cadon nonetheless granted Demyanovich vacation time the following week.  He returned to work on February 23, 2010 and left early to visit his doctor.  Cadon says he left because he was not feeling well; Demyanovich says he had a scheduled appointment and worked his entire shift before leaving.

Cadon says that Demyanovich's doctor informed him that, due to his congestive heart disease, he should quit work and file for Social Security benefits.  He returned to Cadon after his appointment and informed Ensign that he needed time off work under the FMLA.  Ensign says he told Demyanovich that Cadon did not have enough employees to allow him to be absent for an indefinite period of time, i.e. Cadon did not have the requisite

number of employees that would subject it to the FMLA.  Further, Ensign informed Demyanovich that he would be out of points if he took the next day off.

### C. Social Security Benefits and Termination of Employment

On February 23, 2010, Demyanovich applied for Social Security benefits for total disability and has been collecting disability benefits since August of 2010.

On February 26, 2010 Cadon terminated Demyanovich for violating the attendance policy.

Demyanovich says he was purposefully assigned difficult tasks and work assignments in retaliation for seeking FMLA leave.  Demyanovich claims that defendants used his FMLA leave against him in determining that his absences exceeded those allotted by the attendance policy.  He says that defendants terminated him because of his disability and his request for FMLA leave.

On March 15, 2010, Demyanovich filed an ADA discrimination claim with the Equal Employment Opportunity Commission (EEOC).

On September 7, 2010 the EEOC issued a cause determination in favor of Demyanovich.

On October 27, 2010, Demyanovich received a notice of right to sue from the EEOC. He brought this suit within 90 days, on December 23, 2010.

### III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the

6

non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial.  <u>Chappell v. City of Cleveland</u>, 585 F.3d 901, 906 (6th Cir. 2009).  The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  <u>Hawkins v. Anheuser-Busch, Inc.</u>, 517 F.3d 321, 332 (6th Cir. 2008).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

## IV. ANALYSIS

### A. FMLA Interference

### 1.

The FMLA provides eligible employees with not more than 12 weeks of unpaid leave for reasons that include "serious health conditions" making the employee unable to perform his or her job.  29 U.S.C. § 2612(a)(1)(D); <u>Harris v. Metro. Gov't of Nashville</u>, 594 F.3d 476, 482 (6th Cir. 2010).  A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  An employee returning to work after taking leave has the right to be "restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment."  § 2614(a)(1)(A)-(B).

For a FMLA interference claim to succeed, a plaintiff must establish five elements: 1) he was an eligible employee; 2) his employer was a covered employer as defined by the

7

statute; 3) he was entitled to leave under the FMLA; 4) he gave defendant notice of his intent to take this leave; and 5) defendant denied him FMLA benefits or interfered with his FMLA rights.  Harris, supra, at 482; Greer v. Cleveland Clinic Health Sys.-East Region, No. 11-3280, 2012 WL 5359255, at *3 (6th Cir. Oct. 31, 2012).  When an employee is unable to return to work at the end of the 12 weeks of unpaid leave, however, there is no FMLA violation.  Edgar v. JAC Prods., Inc., 443 F.3d 501, 506-07 (6th Cir. 2006) (citing Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 155 F.3d 775, 784-85 (6th Cir. 1998); Williams v. Toyota Motor Mfg., Ky., Inc., 224 F.3d 840, 845 (6th Cir. 2000), rev'd on other grounds, 534 U.S. 184 (2002)); see also Bryson v. Regis Corp., 498 F.3d 561 (6th Cir. 2007).  This is true even if the medical information that reveals that the employee is unable to return to work is not known to the employer until after the termination decision.  Id. at 513.  The linchpin of an FMLA interference claim is the right to reinstatement and "the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends."  Id. at 507(citing Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 978 (8th Cir. 2005); 29 C.F.R. § 825.216(a)).

The Sixth Circuit recently clarified that the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies to FMLA interference claims "where the plaintiff produces indirect evidence of a causal connection between the protected activity and the adverse employment action."  See Donald v. Sybra, Inc., 667 F.3d 757, 761-62 (6th Cir. 2012) (citations omitted).  Thus, the Court will apply the McDonnell Douglas framework to the FMLA interference claim.

8

Under <u>McDonnell Douglas</u>, Demyanovich must first establish his prima facie case. If he establishes a prima facie case, the burden shifts to defendants to show a nondiscriminatory rationale for Demyanovich's termination. <u>Edgar</u>, 443 F.3d at 508 (<u>citing Skrjanc v. Great Lakes Power Serv. Co.</u>, 272 F.3d 309, 315 (6th Cir. 2001). If defendants succeed in showing a nondiscriminatory rationale, the burden shifts back to Demyanovich to show that defendants intentionally discriminated against him. <u>Bryson v. Regis Corp.</u>, 498 F.3d 561, 570 (6th Cir. 2007) (citations omitted).

**2.**

Demyanovich cannot establish a prima facie case of FMLA interference. Defendants proffered evidence that established that Demyanovich would not have been able to return to work had his FMLA leave been granted. Thus, Demyanovich was not an "eligible employee" and there was no FMLA violation.

Demyanovich's job at Cadon required a number of physical demands. The job description for a line operator states:

> PHYSICAL DEMANDS: The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions. While performing the duties of this job, the employee is regularly required to stand; use hands to finger, handle, or feel objects, tools, or controls; and reach with hands and arms. The employee must regularly lift and/or move up to 25 pounds and occasionally lift and/or move up to 50 pounds.

(Doc. 34-5, p. 3).

Demyanovich applied for Social Security disability benefits on February 23, 2010. In support of his application, he supplied medical reports from Dr. Mussani. Dr. Mussani's

reports reflect that on February 23, 2010, he advised Demyanovich to quit work and apply for Social Security disability benefits (Doc. 34-11, p. 11).[3]  In his application for disability benefits, filed on the same day, Demyanovich listed congestive heart failure as the primary diagnosis and diabetes mellitus as the secondary diagnosis (Doc. 34-12).  He stated that the disability began on February 23, 2010 (Id.).[4]

On May 14, 2010, Demyanovich was examined by a disability examiner, Hugh Bray, "to determine current strengths in intellectual and cognitive skills" (Doc. 34-13, p.3). Demyanovich stated to Bray, "I'm tired, don't feel like doing much.  Our son just passed not too long ago.  I feel somewhat overwhelmed, somewhat emotional" (Id.).  When assessing Demyanovich's ability to work, Bray opined that "[t]he claimant [Demyanovich] is not able to work."  He further noted that Demyanovich reported that, if he were offered a job, his health would prevent him from working (Id. at 4).  Noting his physical health history, Bray's report states, "The claimant's physical health is currently reported as poor.   Health problems were described as hernia, congestive heart failure, cardiomyopathy, liver failure, sleep apnea.  The claimant reported limitation/restrictions in standing, twisting, bending,

---

[3] Dr. Mussani's reports are handwritten and his handwriting is hard to make out.  It is not clear what medical condition led Dr. Mussani to recommend that Demyanovich quit his job at Cadon.  Presumably, it is his congestive heart failure, which the parties address in their papers.

[4] Demyanovich argues that his qualification for Social Security benefits is irrelevant to this case.  However, the Court does not rely only on his statements made to obtain Social Security benefits.  It also relies on Mussani's opinion that Demyanovich is disabled.  Demyanovich treated with Mussani since at least 1999.  This was the first time Mussani opined that Demyanovich was disabled and could no longer perform his job functions, with or without restrictions.  Up until February 23, 2010, Mussani had always cleared Demyanovich to return to work with certain restrictions.

lifting, squatting, walking (SOB).   Pain behavior was reported by claimant and was observed in the stomach.  Pain level reported as 7 and typical" (Id. at 5).

In his deposition testimony, Demyanovich admitted that, at the time he was fired, he was unable to perform his job:

> Q: So you applied for Social Security Disability after February 23rd of 2010?
>
> A: No, after I was looking for those jobs, because I was okay to do some kind of job, I thought.  So I was looking for a job for now, and then as I was, I applied for Social Security, and they said I was disabled.
>
> Q: Now, you said in your answer to one– to my question that you thought you were okay to do some kind of job, what kind of job did you think you were okay to do?
>
> A: Something that I could do that's less stressful and, you know, I could pace myself, I wouldn't have to be in a hurry, because as long as I'm doing something slow, it's okay.  It's just when I'm doing that, uh-uh, because I fill up with fluid if I get overworked too, because you want to drink water all the time, and that fills you up with fluid.  I'm fighting with that, my health like that fighting, it's just an ongoing thing, man, fighting this and watching the salt.
>
> Q: When you said– I'm sorry, were you done with your answer?
>
> A: And all the stress and everything else, you know, that's what it's all adding up, you know.
>
> Q: You said you were okay to do some kind of job that was less stressful, less stressful than what?
>
> A: Less stressful than my other job or something where I could sit or. . .
>
> Q: Less stressful than other job, you're referring to Cadon?
>
> A: Yes.

11

(Demyanovich Dep., pp. 198-99).[5]

Demyanovich also testified that he currently cannot work:

Q: It's gotten worse?

A: Yeah.

. . . .

A. Well, I can't do — you know, can't do work anymore like I wanted to.  I don't know.  I don't know.

Q. You don't know what– how your condition has changed?

A. No, it's changed so much, I don't know.  I can't do hardly nothing anymore.  I'm all stressed out and everything else.

(Demyanovich Dep., pp. 123).

The evidence presented by defendants establishes that Demyanovich was unable to perform his job as of February 23, 2010.  Dr. Mussani's reports, Bray's opinion, and Demyanovich's Social Security application and deposition testimony all support the conclusion that he was disabled.  Thus, he would have been unable to return to work if he was granted FMLA leave.   Because Demyanovich would not have been able to return to work, he cannot establish that he was an "eligible employee" for his FMLA interference claim.[6]

_____

[5] Demyanovich denies that he applied for Social Security disability benefits on February 23, 2010.  He says he applied for benefits sometime after looking for a different job. However, his application for benefits is dated February 23, 2010.

[6] Defendants also argue at length that Cadon was not an eligible employer under the FMLA.  The FMLA excludes from coverage employers with fewer than fifty employees "during each of 20 or more calendar workweeks in the current or preceding calendar year."  29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.04(a).  However, as Demyanovich correctly notes, there is a question of fact as to whether Cadon is affiliated with MNP Corporation (MNP), a company with over 500 employees.  Separate employers will be

12

Demyanovich says his ability to satisfactorily complete his job for his entire career at Cadon proves that he is an "eligible employee." However, as defendants correctly stated at oral argument, Demyanovich's ability to perform his job for 20 years has no bearing on the issue of whether he was disabled at the time he was terminated. Further, defendants

_____

deemed one in the same if they meet the "joint employment" or "integrated employer" tests. Moreover, Demyanovich has presented evidence showing that Cadon gave other employees FMLA leave during the relevant period (See, e.g. Doc. 38-3, p. 15).

The Sixth Circuit addressed the integrated employer test in Grace v. USCAR, stating that "the integrated employer test is a mechanism to ensure that the appropriate employees are aggregated for the numerosity test of the FMLA." 521 F.3d 655, 664 (6th Cir. 2008). In Grace, Rosalyn Grace worked for USCAR, an IT company formed as a general partnership between Ford Motor Company, DaimlerChrysler Corporation and General Motors Corporation. Id. at 659. Grace worked as a contract employee for agencies providing workers for USCAR. Id. at 659-60. Two main agencies were DGE and Bartech. Id. at 660. In considering whether the agencies and USCAR were integrated employers, the court of appeals applied the four factors in 29 C.F.R. § 825.104(c)(2) and held that the integrated employer test was not met.

Here, unlike Grace, Demyanovich has established a material issue of fact as to whether Cadon and MNP are integrated employers. As to the common management element, Craig Stormer is the executive vice president of both Cadon and MNP. Randy Allison, the human resource manager for MNP, also provided the same services for Cadon. The second element– interrelation between operations– also favors a finding that Cadon and MNP were integrated employers. Although the companies have separate locations, they maintain the same business address. Moreover, half of the business Cadon conducts is for MNP. Unlike Grace, both companies here prepare parts to be used in automobiles, the same line of business. The third element– centralized control of labor relations– also favors a finding that Cadon and MNP are integrated employers. Allison consulted with Ensign to make decisions about Cadon's employees and represented Cadon in its collective bargaining agreement with employees. At the same time, he continued his position as MNP's human resource manager. Finally, the last element– degree of common ownership/financial control– also favors a finding that Cadon and MNP are integrated employers. Ensign stated in his deposition that Cadon and MNP share some common owners: "Cadon is owned by a group of investors that also owned MNP Corporation, but there's a mix. There's an ownership mix so we are an LLC." (Ensign Dep., p. 5). Considering all of the factors together, there are enough fact issues that question whether Cadon and MNP are integrated employers under the FMLA.

point to Demyanovich's less than ideal attendance, which reflects on his ability to perform his job.

Demyanovich also says that defendants could have accommodated him by (1) limiting his work schedule or (2) allowing him to take vacation or other leave. The medical evidence, however, does not support Demyanovich's position that he would be able to perform his job if he worked less or was allowed to take more time off. Contrary to Mussani's past statements that Demyanovich was able to work under certain restrictions, his February 23, 2010 opinion was that Demyanovich should quit his job and file for Social Security disability benefits. Demyanovich's longtime treating physician realized that he was no longer able to work.

### B. FMLA Retaliation

The FMLA statute makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the statute" 29 U.S.C. § 2615(a)(2). Employers cannot "use the taking of FMLA leave as a negative factor in employment actions." Arban v. West Pub. Corp., 345 F.3d 390, 403 (6th Cir. 2003) (quoting 29 C.F.R. § 825.220(c) (internal quotations omitted)). This is true even if only a portion of the leave taken by an employee in violation of the employer's attendance policy and resulting in adverse employment action is FMLA leave. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 163 (1st Cir. 1998). Unlike an FMLA interference claim, a retaliation claim focuses on the employer's motive for discharge the employee. Edgar, 443 F.3d at 508; Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 282 (6th Cir. 2012).

14

Like the FMLA interference claim, the McDonnell Douglas burden-shifting framework applies to FMLA retaliation claims. Seeger, 681 F.3d at 283 ("Where, as here, [plaintiff] sets forth an FMLA claim based on circumstantial evidence alleging a single motive for discrimination, it is evaluated under the familiar McDonnell Douglas burden-shifting framework.") (citations omitted).[7]   In order to succeed on the FMLA retaliation claim, Demyanovich "must prove (1) that he engaged in an activity protected by [the FMLA]; (2) that this exercise of his protected civil rights was known to defendant[s]; (3) that defendant[s] thereafter took an employment action adverse to [Demyanovich]; and (4) that there was a causal connection between the protected activity and the adverse employment action." Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990) (citing Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987)); see also Donald, 667 F.3d at 761. If Demyanovich satisfies each element, the burden shifts to defendants to show a nondiscriminatory rationale for Demyanovich's termination. Edgar, 443 F.3d at 508 (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001). If defendants succeed in showing a nondiscriminatory rationale, the burden shifts back to Demyanovich to show that defendants intentionally discriminated against him. Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007) (citations omitted).

**i.**

Demyanovich has satisfied the low burden of establishing a prima facie case of retaliation. Seeger, 681 F.3d at 283 ("The burden of proof at the prima facie stage is

---

[7] Demyanovich says he has presented direct evidence of discrimination. His only "direct" evidence is a self-serving statement in his deposition that Ensign told him he was being discharged because he was a "liability."

15

minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity.") (quoting Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)).  He requested FMLA leave for his congestive heart failure and diabetes, which is an activity that is statutorily protected.  Demyanovich reported to Cadon shortly after his visit with Mussani and explained why he needed to take FMLA leave, so defendants were aware that he wanted to exercise his rights under the FMLA.  He suffered an adverse employment action; he was discharged.  Finally, Demyanovich has satisfactorily showed a causal connection between his firing and request for FMLA leave because he was fired three days after he sought to take FMLA leave.  The Sixth Circuit has held that "proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection."  Bryson, 498 F.3d at 571 (citing Skrjanc, 272 F.3d at 314; Chandler v. Specialty Tires of Am., 283 F.3d 818, 826 (6th Cir. 2002)); see also Seeger, 681 F.3d at 283 ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." (citations omitted).  In addition, Demyanovich proffered evidence showing that defendants had him work in excess of what his doctors had recommended when returning from FMLA leaves.

**ii.**

As Demyanovich established a prima facie case of retaliation, the burden shifts to defendants to show a legitimate, non-discriminatory reason for terminating him.  Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)).  Defendants offer two non-

16

discriminatory reasons for terminating Demyanovich: (1) he violated Cadon's attendance policy and (2) he was disabled and was unable to return to work.

Defendants have provided evidence to support both reasons for terminating Demyanovich. First, defendants proffered evidence to show that Demyanovich violated Cadon's attendance policy. The attendance policy makes clear that an employee who has zero points remaining is subject to discharge. Demyanovich's attendance record shows that, at the time he was discharged, he had zero points remaining.[8] Since 2001, when the attendance policy went into effect, Demyanovich was reprimanded about his attendance sixteen times. See (Doc. 34-7). He was given a "final warning" regarding his attendance five times from 2005 to 2009 (Id.); (Doc. 34-8). Finally, on February 26, 2010, he was fired (Doc. 34-9).

Second, as discussed above, defendants have proffered evidence that established that Demyanovich would not have been able to return to work had his FMLA leave been granted. An employer is shielded from liability from an FMLA retaliation claim if the employee would be unable to return to work after FMLA leave. Edgar, 443 F.3d at 413. However, an employer is not shielded from liability where the employer "learns of the employee's inability to return to work only after the termination decision." Id. at 414. Here, the evidence shows that Demyanovich would not have been able to return to work, and the evidence to support this position was available prior to his termination. Mussani's opinion

---

[8] Demyanovich disputes that he had zero points remaining at the time of his discharge. This contention, however, is belied by the record. The record is replete with warnings to Demyanovich that his point total was low. Defendants provided him with multiple second-chances when his point total reached a negative balance. Further, Demyanovich does not provide any evidence to show that Cadon wrongfully calculated his attendance points.

and recommendation that Demyanovich quit work and file for Social Security disability benefits came three days before Demyanovich was discharged (Doc. 34-11, p.11). His application for Social Security disability benefits, also filed on the same day, relies on Mussani's opinion. Accordingly, because the medical evidence revealing Demyanovich's inability to return to work was available before his termination, defendants had a valid reason for terminating him.

Defendants have met their burden in establishing a legitimate, non-discriminatory reason for Demyanvoich's termination.

### iii.

The burden shifts back to Demyanovich to show that the described reasons for terminating him were pretextual and that he suffered intentional discrimination. Demyanovich has failed to carry his burden. "[A] reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Seeger, 681 F.3d at 285 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." Id. (citation omitted). However, no matter the method employed, the burden still remains on Demyanovich to produce sufficient evidence which would allow a jury to reasonably reject the defendants' explanation and infer that they intentionally discriminated against him. Id. (citing Clark v. Walgreen Co., 424 F. App'x 467, 474 (6th Cir. 2011)).

Demyanovich challenges defendants' reason for terminating him as (1) having no basis in fact and (2) being insufficient to warrant termination. First, at oral argument,

18

Demyanovich stated that "there's actually . . . a question of fact with respect to whether or not Cadon properly . . . applied its no fault attendance policy." Demyanovich stated that defendants miscalculated Demyanovich's remaining points by one point.  However, the Sixth Circuit has adopted the "honest belief" rule, describing it as follows:

> Under [this] rule, an employer's proffered reason is considered honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made.  Thereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held.   An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact.

Id. at 285 (citation omitted).   The central inquiry is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  Id. (citing Smith v. Chrystler Corp., 155 F.3d 799, 807 (6th Cir. 1998)).  "An employer's invocation of the honest belief rule does not automatically shield it, because the employee must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" Id. at 286 (citation omitted).

Here, Demyanovich's attendance record reveals that he was warned numerous times that he was subject to discharge.  He received more than one "final" warning. Demyanovich says that in February of 2010, he was awarded two points for completing eight consecutive weeks of perfect attendance.  However, he says that the attendance policy did not contain a provision allowing an award of two points, and, that he should have been awarded three points.  Demyanovich fails to establish that if defendants erred in calculating his attendance points, the error was "too obvious to be unintentional."

19

Further, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." Donald, 667 F.3d at 763 (citing Skrjanc, 272 F.3d at 317). Rather, suspicious timing of the discharge must be accompanied by "some other, independent evidence." Seeger, 681 F.3d at 285 (citing Bell v. Prefix, Inc., 321 F. App'x 423, 431 (6th Cir. 2009)). Demyanovich fails to present any evidence aside from the temporal proximity of his discharge.

Second, Demyanovich says that defendants could not lawfully discharge him based on a violation of the no-fault attendance policy because his absences were attributable to protected leave. However, Demyanovich has not presented any evidence which establishes that the absences that led him to a negative point balance were connected to protected leave. The record is replete with multiple admonishments and final warnings informing Demyanovich of his poor attendance. Demyanovich has not presented any evidence which tends to show defendants intentionally discriminated against him.

Accordingly, defendants are entitled to summary judgment on the FMLA retaliation claim.

### C. ADA Interference

### 1.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case of discrimination under the ADA requires a plaintiff to show "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to

20

perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. The third element requires that the plaintiff suffer an adverse employment action." <u>Baker v. Windsor Republic Doors</u>, 414 Fed. App'x 764, 770-71 (6th Cir. 2011) (<u>citing</u> <u>Talley v. Family Dollar Stores of Ohio, Inc.</u>, 542 F.3d 1099, 1105 (6th Cir. 2008) (internal quotation marks omitted)). Essentially, a plaintiff must prove that his disability was a "but-for" cause of the employer's adverse decision. <u>Lewis v. Humboldt Acquisition Corp., Inc.</u>, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

**2.**

Defendants first focus on the second element and say there is no issue of material fact that Demyanovich was not a "qualified individual" under the ADA because he was unable to perform the duties of his job when he was terminated.[9] Defendants rely on a Social Security determination that Demyanovich was disabled due to chronic heart failure and diabetes mellitus on February 23, 2010. As such, defendants say Demyanovich was not qualified for the job, an essential element for the ADA claim, due to his total disability. Further, defendants say Demyanovich never requested reasonable accommodations.

Demyanovich says he was qualified to perform the duties of his job. Ensign, in his deposition testimony, recognized that Demyanovich had no issues performing his job. Further Demyanovich says he requested multiple accommodations. Significantly, Demyanovich points to his request on February 23, 2010, three days before he was discharged, when he asked for time off because his overtime was worsening his medical condition.

---

[9] Defendants do not contest that Demyanovich has a disability.

**i.**

The ADA defines qualified individual as follows:

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). Further, "reasonable accommodation" includes "job restructuring, part-time or modified work schedules..." Id. at § 12111(9).

**ii.**

As explained in detail above, see supra IV.A.2, Demyanovich was unable to return to employment at Cadon as of February 23, 2010. In his deposition testimony, he stated that he was unable to perform any job at Cadon and that he was looking for a job elsewhere (Demyanovich Dep., pp. 198-99). Mussani, his treating doctor since at least 1999, stated that Demyanovich was unable to work.[10]

Nevertheless, Demyanovich says that, with reasonable accommodations, he could have performed some type of work at Cadon. Demyanovich claims Cadon could have: (1) modified his work schedule, (2) allowed him to take FMLA leave, or (3) allowed him to

---

[10] Defendants also say that Demyanovich was not discriminated against based on his disability, if any. Rather, defendants say he was discharged for a valid reason: violating the attendance policy. The record is replete with instances that Demyanovich was in violation of the attendance policy. In the past, Cadon warned him and let it slide. This time, he was discharged.

perform a different job.  Demyanovich says he requested accommodations by providing

Cadon with his FMLA leave paperwork.

      The Sixth Circuit has recognized that,

> [g]enerally, an ADA plaintiff "bears the initial burden of
> proposing an accommodation and showing that the
> accommodation is objectively reasonable."  Where the
> requested accommodation is a job transfer, "employers have
> a duty to locate suitable positions for" employees with
> disabilities. Nonetheless, to overcome summary judgment, the
> plaintiff generally must identify the specific job he seeks and
> demonstrate that he is qualified for that position.

Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 870 (6th Cir. 2007) (internal citations

omitted).

      Although Demyanovich's deposition testimony reveals that he asked to be

transferred to the end of "paint line 1" or a "sorting job" as a reasonable accommodation,

he fails to present any evidence that he was qualified for those positions or that he would

be able to perform those positions.  The only evidence provided by Demyanovich is his own

deposition testimony:

> Q: Okay.  Now, you also said in your answer to the last
> question that you could have done something else, what other
> jobs are you referring to that you could have performed?
>
> A: I could have performed a sorting job or a –
>
> . . . .
>
> A: Sorting or I could have caught at the end of paint line 1
> because it's [sic] run slower, but every time I had asked to go
> over there or whatever, Joe Gooding would always tell me Al
> said no, you're on paint line 3.
>
> . . . .

> Q: How many times did you ask Joe Gooding to go to paint line 1?
>
> A: A few times.
>
> Q: How many is a few, more than one?
>
> A: Yeah, about three times, and then I just quit asking because every time the answer was the same.

(Demyanovich Dep, pp. 138-139).  Demyanovich's deposition testimony, alone, claiming that defendants could have transferred him to another job does not satisfy his burden on summary judgment.  In addition, as stated above, the medical evidence and Demyanovich's own testimony shows that he was unable to perform *any* job.  Accordingly, he has not established that he is a "qualified individual" under the ADA.

### D. PWDCRA Claim

"To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute."  Peden v. City of Detroit, 470 Mich. 195, 217 (2004) (quoting Chmielewski v. Xermac, Inc., 457 Mich. 593, 601 (1984)).  "[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity."  Peden, supra, at 204.

A violation of the ADA does not constitute a violation of the PWDCRA per se; a separate analysis of claims under each statute must be made.  Peden, supra, at 217 ("[B]ecause the acts are not identical, and because federal laws and regulations are not binding authority on a Michigan court interpreting a Michigan statute, we caution against simply assuming that the PWDCRA analysis will invariably parallel that of the ADA.").  On

24

the other hand, these statutes have a majority of elements in common thus the analysis is "essentially the same." Id. ("[T]he ADA's qualified language and the PWDCRA's disability language require essentially the same analysis.") (internal quotation marks omitted).

Here, as discussed above, Demyanovich admitted that he was unable to perform his job at the time he was discharged. His admission is supported by the representations he made in seeking Social Security benefits, Mussani's reports, and Bray's opinion. Accordingly, his claimed disability is related to his ability to perform his job duties, and his claim under the PWDCRA will be dismissed.

### E. ADA Retaliation

Defendants fail to address the ADA retaliation claim in their papers. An ADA retaliation claim is separate and distinct from the ADA interference claim. Bryson v. Regis Corp., 498 F.3d 561, 577 (6th Cir. 2007). "A plaintiff may prevail on a disability-retaliation claim 'even if the underlying claim of disability fails.' " Id. (citations omitted). However, an ADA retaliation claim "is evaluated under the same tripartite McDonnell Douglas burden-shifting framework as [a] FMLA-retaliation claim." Id.

When addressing the FMLA retaliation claim, the Court concluded the following: (1) Demyanovich met his burden in establishing a prima facie case of retaliation; (2) defendants provided evidence that Demyanovich was terminated for a legitimate, non-discriminatory purpose (his violation of the attendance policy and his inability to return to work) and (3) Demyanovich failed to provide any evidence to show that defendants' reasons for terminating him were pretextual. Accordingly, for the same reasons, the ADA retaliation claim must be dismissed.

### V. CONCLUSION

25

For the reasons above, defendants' motion for summary judgment is GRANTED.

This case is DISMISSED.

SO ORDERED.


Dated: December 4, 2012                    S/Avern Cohn_____
                                           United States District Judge




I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 4, 2012, by electronic and/or ordinary mail.

                                           S/Sakne Chami
                                           Case Manager, (313) 234-5160

26